## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**A. HIRSCH REALTY, LLC,**                              Chapter 11
　　　Debtor                                    Case No. 18-10043-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion filed by MSCI 2007-IQ16 Blue Hill Avenue, LLC ("Blue Hill") to Dismiss or, in the Alternative, for Relief from Stay (the "Motion to Dismiss or for Relief from Stay").   The Debtor filed an objection to the Motion, and the Court held a hearing on April 3, 2018, at which the Court directed the Debtor's attorney to file a supplemental brief on the judicial estoppel argument made by Blue Hill, which was filed on April 6, 2018.   The Court then took the matter under advisement.

Preliminarily, A. Hirsch Realty, LLC (the "Debtor"), through its Expedited Motion for Use of Cash Collateral (the "Cash Collateral Motion"),  and Blue Hill, in its Opposition to the Cash Collateral Motion, as well as in its Motion to Dismiss or for Relief from Stay, raise the issue of the enforceability of certain prepetition bankruptcy waivers, including a waiver of the protection of the automatic stay, a waiver of the right to oppose dismissal of the case, and a waiver of the use of cash collateral, which were contained in a modification agreement (the "Modification Agreement") that was approved, in form, prior to its execution, by the bankruptcy court in the Debtor's prior Chapter 11 case in

1

conjunction with confirmation of the Debtor's First Amended Plan of Reorganization. The Debtor, on the one hand, takes the position that the provisions are unenforceable because they amount to a complete waiver of bankruptcy protection in violation of public policy. Blue Hill, on the other hand, maintains they are enforceable, thus warranting dismissal of the Debtor's case, or, alternatively, entry of an order granting it relief from the automatic stay.

The issue initially was raised on February 7, 2018 at a hearing on the Debtor's Expedited Motion for Use of Cash Collateral on an Interim Basis.  At that time, the Court entered the following order:

> For the reasons stated on the record, the Court authorized the Debtor's interim use of cash collateral through the continued hearing date of March 7, 2018 at 11:00 a.m. The Debtor shall file a reconciliation of actual income and expenses to projections by March 6, 2018 at 4:30 p.m. Counsel shall submit their briefs on the objection and on the legal issues identified at the hearing and any agreed statement of facts by February 19, 2018 at 4:30 p.m. In the event, the parties cannot agree on all facts needed for the Court to decide the legal issues, they shall file a joint statement of disputed facts by February 19, 2018 and the Court will schedule an evidentiary hearing.

The parties obtained an extension of time to file briefs.  On March 12, 2018, Blue Hill filed its Motion to Dismiss or for Relief from Stay, the Debtor filed a Brief in Opposition to Blue Hill's Motion to Dismiss or for Relief from Stay in which it challenged the enforceability of certain provisions of the parties' prepetition Modification Agreement, and the parties filed a Stipulation of Undisputed and Disputed Facts in Connection with the Motion to Dismiss or for Relief from Stay and the Debtor's Opposition.

The *material* facts necessary to resolve the issue as to the enforceability of the prepetition waivers are not in dispute.  For the reasons set forth below, the Court only

2

shall consider Blue Hill's alternative request for relief from the automatic stay.  The Court

shall enter an order granting Blue Hill's alternative request to grant it relief from the

automatic stay.

## II. THE PARTIES' STIPULATION OF UNDISPUTED FACTS

The Court paraphrases the Stipulation and supplements the Undisputed Facts

filed by the parties with reference to the contents of documents filed in the Debtor in its

prior case. [1]

A. Background

Approximately six years ago, on March 14, 2012, the Debtor filed a Chapter 11 case

captioned A. Hirsch Realty, LLC, Case No. 12-12092-WCH (Bankr. D. Mass.) (the "First

Bankruptcy").  The Debtor filed the First Bankruptcy to prevent a foreclosure of the

Property, as defined below.

On January 5, 2018, the Debtor commenced its present Chapter 11 case as a single

asset real estate case, as defined in 11 U.S.C. § 101(51B), with the filing of a voluntary

petition. Andrew H. Sherman executed the petition as Manager and authorized

representative of the Debtor.  In addition Andrew Sherman, as the Manager and 99%

Member of the Debtor, executed the "Written Consent of Managers and Members,"

authorizing the commencement of the Chapter 11 case.

---

[1] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re
Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy
court appropriately took judicial notice of its own docket.").

On January 19, 2018, the Debtor filed its Schedules and Statement of Financial Affairs. On Schedule A/B: Assets – Real and Personal Property, it listed real property located at 1613-1615 Blue Hill Avenue, Mattapan, Massachusetts (the "Property") with a value of $4 million. On Schedule D: Creditors Who Have Claims Secured by Property, the Debtor listed Blue Hill as the holder of a first mortgage in the amount of $2,584,359.31. On Schedule E/F: Creditors Who Have Unsecured Claims, the Debtor listed four claims, including the claims of the Massachusetts Development Finance Agency in the sum of $288,000; Marlene Sherman in the sum of $80,000,[2] Skolnick CPA in the sum of $4,200, and Associated Elevator Companies in the sum of $1,800.[3] It also listed eight unexpired commercial real estate leases with tenants for premises at the Property.

B. Undisputed Facts

The Debtor's sole business is owning and managing the Property. The Property is a three-story commercial building in Mattapan Square consisting of approximately 16,000 square feet. The first floor contains retail space and the second and third floors contain offices. The only income generated by the Debtor is the rental income from the Property.

---

[2] Blue Hill's predecessor objected to Marlene Sherman's claim in the First Bankruptcy, alleging that it was not a loan but an equity contribution to the Debtor. Marlene Sherman filed a response in which she represented that she was Andrew Sherman's mother, had lent him $432,500 for construction of the property, that as of the filing date $335,400 had been repaid, inclusive of interest, and that $80,000 remained due and owing.

[3] In the Debtor's First Bankruptcy, it listed unsecured claims totaling $211,950 on Schedule F – Creditors Holding Unsecured Nonpriority Claims, $162,050 less than on Schedule E/F in the present case.

On or about August 1, 2007, the Debtor secured a loan from NCB, FSB in the original principal sum of $2,300,000 with respect to the Property.  The terms and conditions of the loan are evidenced by, among other documents, a Mortgage Note (the "Note"), a Mortgage, Assignment of Leases and Rents and Security Agreement (the "Mortgage"), and an Assignment of Leases and Rents (the "Assignment") (collectively, the "Loan Documents").  The original Note was subject to the following basic terms:

    a. Principal balance: $2,300,000.00
    b. Monthly payment: $14,161.50
    c. Maturity date: August 1, 2017
    d. Interest rate: 6.25%
    e. Default interest rate: 11.25%

Through a series of loan assignments, the Loan Documents were assigned to Blue Hill.[4] On or about March 2011, the Debtor defaulted under the Note by failing to remit all amounts due.

U.S. Bank, N.A., as Trustee for the Registered Holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16 (the "Trust") filed a claim in the First Bankruptcy (which was subsequently allowed) in the sum of $2,480,134.45.[5]  The claim was comprised of the following amounts:

---

[4] According to Blue Hill, the Trust, defined above, "assigned the Loan Documents to Blue Hill so that it could take possession of the Property following the scheduled foreclosure sale. Blue Hill's sole member is U.S. Bank, N.A., as Trustee for the Registered Holders of Morgan Stanley Capital I Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16."

[5] The Trust represented that NCB, FSB assigned the loan documents to LaSalle Bank, National Association, as Trustee for the Holders of Morgan Stanley Capital I, Inc. Commercial Mortgage Pass-Through Certificates Series 2007-IQ16.  It further represented

Principal: $2,200,816.25
Accrued interest: $132,965.98
Default interest: $94,146.03
Late charges: $7,788.88
Servicing advances: $46,135.13
Escrow credits: ($1,717.82)

On May 10, 2013, the Trust filed a disclosure statement and proposed plan of reorganization in the First Bankruptcy. The Trust attached an appraisal of the Property to its disclosure statement indicating the value of the Property, as of October 5, 2012, was $1,070,000 (In its Cash Collateral Motion filed in this case, the Debtor indicated that the value now is approximately $3.8 to $4.0 million.) As part of its disclosure statement and plan of reorganization, the Trust proposed to take title to the Property "for a deemed payment of $1,070,000."

On May 24, 2013, the Debtor filed its own plan. The Trust objected to the Debtor's plan, and the Debtor objected to the Trust's plan. On May 29, 2013, the Court scheduled a plan confirmation hearing for June 26, 2013. On June 18, 2013, the Debtor and the Trust filed a "Joint Motion to Continue Hearings on Adequacy of Disclosure, Plan Confirmation, Pending Claim Objections and to Further Extend the Use of Cash Collateral," seeking to continue the hearing on plan confirmation and other matters for approximately 30 days. Subsequently, the Court rescheduled the hearing for August 14, 2013.

---

that Bank of America, N.A. subsequently became the successor in interest to LaSalle Bank as Trustee and U.S. Bank, in turn, became the successor of Bank of America, N.A. as Trustee.

On October 30, 2013, Judge Hillman conducted a hearing on the competing plans.

He continued the hearing to December 4, 2013, and then to January 8, 2014, and March 5,

2014, each time as a result of one of the parties claiming more time was needed in order

for them to agree on a consensual plan.   On March 4, 2014, the Trust and the Debtor filed

a Joint Motion to Set Final Hearing on Plan Confirmation.[6]   The Court granted the Joint

Motion, canceled the March 5, 2014 hearing, and ordered the filing of a new disclosure

statement and plan before the Court would schedule any further hearings on plan

---

[6] This Joint Motion provides:

> US Bank and the Debtor have negotiated a proposed consensual treatment of the US Bank secured claim in this proceeding, pursuant to which the Debtor's Plan will be amended to provide the following treatment of the US Bank claim:
>
>> a. The obligations of the Debtor and all the guarantors Andrew Sherman and Sara Sherman in connection with . . . the "Loan Documents" . . . shall be affirmed and reinstated in all respects, except as otherwise modified by the terms of the Amended Plan; . . .
>> f. The Debtor will appropriately amend its organizational documents to preclude the commencement of any bankruptcy proceeding at any time at which there is a default under the Loan Documents; . . .
>> j. No payments will be made under the Plan to Andrew Sherman, including his relatives or affiliates. . . .
>> k. No post confirmation payments will be made to Andrew Sherman, including his relatives or affiliates, for any reason at any time at which the obligations to US Bank are in default. . . .
>> n. US Bank will withdraw its pending Plan of Reorganization.
>
> Id., Section 1.

confirmation.  It stated in pertinent part:  "Because of the radical changes proposed to the disclosure statement and plan, a new disclosure statement and plan must be filed before any further hearing will be scheduled. The parties shall notify the court to the extent that the motions previously scheduled for today still require hearings."

The parties took several additional months to finalize an amended disclosure statement and plan of reorganization.  On July 17, 2014, the Debtor filed an agreed upon First Amended Plan of Reorganization[7] and a Proposed Form of Disclosure Statement Regarding Debtor's First Amended Plan of Reorganization (the "Disclosure Statement"). The Court approved the Disclosure Statement and held a confirmation hearing on September 18, 2014.  In support of confirmation, the Debtor's principal, Andrew Sherman ("Sherman"), filed an Affidavit.  Thereafter, the parties filed periodic updates with the Court concerning their ongoing efforts to negotiate mutually agreeable loan documents. On December 2, 2014, the parties filed a Joint Motion for Entry of Proposed Confirmation

---

[7] With respect to the treatment of the Class 2 Claim of U.S. Bank, the First Amended Plan of Reorganization substantially incorporated the terms set forth in the Joint Motion and specifically provided, in pertinent part, the following:

> (e) The Debtor and guarantors Andrew Sherman and Sara Sherman, will execute amended Loan Documents in a form and manner acceptable to U.S. Bank.
> (f) … The Debtor will appropriately amend its organizational documents to preclude the commencement of any bankruptcy proceeding at any time at which there is a default under the Loan Documents.
> (g) The Debtor will not make any post-confirmation payments to Andrew Sherman, including his relatives or affiliates, for any reason, at any time at which the obligations to U.S. Bank are in default.

Order.  The Court entered the Confirmation Order that same day (the "Confirmation

Order"). The Confirmation Order provided:

> The obligations of the Debtor and the guarantors, Andrew Sherman and
> Sara Sherman, in connection the promissory note dated August 1, 2007 in
> the original principal amount of $2,300,000.00 (the "Note"), the mortgage
> on Debtor's property commonly known as 1613-1615 Blue Hill Avenue,
> Mattapan, Massachusetts and recorded in the Suffolk Registry of Deeds at
> Book 42285, Page 156 (the "Mortgage"), which is now held by U.S. Bank,
> National Association, as Trustee for Morgan Stanley Capital I Inc.,
> Commercial Mortgage Pass-Through Certificates, Series 2007-IQ16 ("U.S.
> Bank") and an Assignment of Leases and Rents at the Property (the
> "Assignment"), as well as other financing documents (collectively the
> "Loan Documents") shall be affirmed and reinstated in all respects, except
> as otherwise modified by the Plan and the terms of this Order. The Debtor
> shall execute the Modification Agreement attached hereto as Exhibit A
> (with the loan balances as updated and amended by the noteholder through
> the date of execution) and shall otherwise cause the Modification
> Agreement and the closing conditions of the Modification Agreement to be
> completed.

The Confirmation Order also provided that "in the event that the Modification

Agreement and other loan documents have not been duly executed the Court will

schedule a hearing on the dismissal of the proceeding."

Approximately two and one-half months after the entry of the Confirmation

Order, on February 12, 2015, the parties executed the Modification Agreement.  Sherman

and his wife, Sara Sherman, signed a Joinder By and Agreement of Guarantor (the

"Joinder").  Pursuant to a Fifth Status Report filed by U.S. Bank in accordance with

Confirmation Order, U.S. Bank advised the Court that "[t]he Debtor has provided this

afternoon (February 12, 2015) by electronic mail copies of certain signature pages

intended to effect the closing of the Plan transactions."

Under the Modification Agreement, $658,203.34 in interest, late fees and lender expenses was capitalized and added to the pre-modification principal balance of $2,153,585.28 for a post-modification principal balance of $2,811,788.62.   Under the Modification Agreement, the interest rate, monthly payment, and maturity date of the loan remained unchanged.   The Modification Agreement provided at Section 2.3 the following:

> No Bankruptcy Intent.   None of Borrower or Guarantor (collectively, "Borrower Parties") has been a party to any Debtor Proceeding within seven (7) years prior to the Effective Date, other than the Pending Debtor Proceeding.   No Borrower Parties has [sic] any intent to (a) file a voluntary petition with any bankruptcy court of competent jurisdiction or to be the subject of any petition under the Bankruptcy Code; (b) be the subject of any order for relief issued under the Bankruptcy Code; (c) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors; (d) seek or consent to or acquiesce in the appointment of any trustee, receiver, conservator, liquidator or assignee for the benefit of creditors; or (e) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party in connection with any Debtor proceeding. *Borrower acknowledges that the filing of any petition or the seeking of any relief in a Debtor Proceeding by any of Borrower Parties, whether directly or indirectly, would be in bad faith and solely for purposes of delaying, inhibiting or otherwise impending* [sic] *the exercise by Lender of Lender's rights and remedies against Borrower and the Property pursuant to the Loan Documents or at law.*

(emphasis supplied).   The Modification Agreement provided at Section 3.4(a) the following:

> Lender Relief Upon Debtor Proceeding. After an Event of Default, including without limitation, an Event of Default under Section 23(g) of the Security Instrument, in the event that any of Borrower Parties shall take any action constituting a Debtor Proceeding (other than the Pending Debtor Proceeding), and such action causes Lender to seek necessary or appropriate relief, then Lender shall be entitled to and *Borrower irrevocably*

> *consents to (a) entry of an order granting stay relief and/or dismissal of such Debtor Proceeding, on either basis, for cause, (b) entry of an order from the bankruptcy court prohibiting Borrower's use of all "cash collateral" (as defined in Section 363 of the Bankruptcy Code) and (c) entry of an order that such Debtor Proceeding is a Single Asset Real Estate Case.* Moreover, (x) Borrower waives its exclusive right pursuant to Section 1121(b) of the Bankruptcy Code to file a plan of reorganization and irrevocably agrees and consents that Lender may file a plan immediately upon the entry of an order for relief if an involuntary petition is filed against Borrower or upon the filing of a voluntary petition by Borrower; (y) in the event that Lender shall move pursuant to Section 1121(d) of the Bankruptcy Code for an order reducing the 120 day exclusive period, Borrower shall not object to any such motion, and (z) Borrower waives any rights it may have pursuant to Section 108(b) of the Bankruptcy Code. Moreover, in the event that Borrower files or colludes in the filing of any action constituting a Debtor Proceeding, Lender shall immediately become entitled, among other relief to which Lender may be entitled under the Loan Documents, and at law or in equity, (x) to obtain an order from the court dismissing such filing as a bad faith filing and Borrower agrees that such filing shall have been made in bad faith and (y) to obtain an order from the court dismissing such filing as a bad faith filing and Borrower agrees that it will take no action to oppose the entry of such order of dismissal or to dispute a finding of fact by the court that such filing was made in bad faith. *The provisions of this Section shall survive the termination of this Agreement.*

(emphasis supplied). In addition, Section 3.5(f) provided that "On or before the Execution Date, Borrower shall have made modifications to it organization documents, as such modification have been approved by Lender to incorporate the concept of an independent manager, whose vote will be needed for Borrower to engage in certain major decisions, one of which being the Borrower seeking relief in a Debtor Proceeding."

On August 31, 2016, the Debtor filed a Motion for Entry of Final Decree. The Court granted the motion on October 5, 2016, and the First Bankruptcy was closed on October 24, 2016.

Following the First Bankruptcy, the Debtor continued operating the Property. The

Debtor's only income is rental income from the Property.  The Maturity Date on the Note was August 1, 2017.  The Debtor defaulted on the modified Note by failing to pay the amount due on maturity.

On or about August 3, 2017, Blue Hill sent the Debtor a Notice of Default, and demanded the turnover of all rents.  On December 1, 2017, Blue Hill filed a lawsuit against the Debtor and against Andrew and Sara Sherman in the United States District Court for the District of Massachusetts, captioned <u>MSCI 2007-IQ16 Blue Hill Avenue, LLC v. A. Hirsch Realty, LLC</u>, Civil Action No. 17-12359-PBS (D. Mass. Dec. 1, 2017).  In addition, Blue Hill scheduled a foreclosure sale for January 5, 2018.  The Debtor commenced the instant case, as a single asset real estate case, in the morning of January 5, 2018 (the "Petition Date"), in order to stay the foreclosure sale scheduled for later that day.

On January 31, 2018, the Debtor filed its Cash Collateral Motion.  With the consent of Blue Hill, the Debtor was authorized to use cash collateral on an interim basis through a continued hearing date of April 3, 2018 and thereafter through a continued hearing on April 23, 2018.

## III. POSITIONS OF THE PARTIES

A. <u>Blue Hill</u>

Blue Hill contends that as part of the Debtor's Plan and the Confirmation Order in the First Bankruptcy, the Debtor agreed to the following in the event it filed a subsequent bankruptcy case while it was in default under its modified loan:

> (1) such a filing would be deemed in bad faith and subject to dismissal as a bad faith filing, *see*, *e.g.*, Modification Agreement, Sections 2.3 and 3.4(a);

(2) that it would not oppose a motion in the subsequent case for relief from the automatic stay, *see* id., Section 3.4(a); and

(3) that it would agree to the entry of an order in the subsequent case prohibiting the Debtor from using any cash collateral, *see* id.

Blue Hill adds:

> The Debtor entered into these agreements: (a) with the benefit of the advice of counsel; and (b) with notice and the opportunity for hearing by the Debtor and the Debtor's creditors, in order to induce the Trust to consent to a plan that allowed the Debtor to continue operating the Property. And, most importantly, upon confirmation these agreements became binding upon the Debtor and, as with any binding court order, must now be enforced. *See* In re Malmgren, 277 B.R. 755, 759 (Bankr. E.D. Wis. 2002) ("If an order is to have any true meaning, if a party is to be able to place any justifiable reliance on an order, if a court is to have any credibility and command any respect, then it must enforce its own orders."). *See also* CHS, Inc. v. Plaquemines Holdings, L.L.C., 735 F.3d 231 (5th Cir. 2013) ("a confirmed plan … is an order of the court"); 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind the debtor"). The Confirmation Order (including the attached Modification Agreement) was even filed with the Suffolk Registry of Deeds on February 23, 2015, as Book 54083, Page 223 (*see* Ex. C), giving notice of it to all interested parties.

Specifically, Blue Hill, citing CHS, Inc. v. Plaquemines Holdings, L.L.C., 735 F.3d 231, 239 (5th Cir. 2013) ("The legal ramifications of a confirmed reorganization plan are highly significant. '[A] bankruptcy court's order confirming a plan of reorganization is given the same effect as a district court's judgment on the merits for claim preclusion purposes.'"), argues that this Court should enforce the Confirmation Order and dismiss the Debtor's case as the provisions of a confirmed plan bind the Debtor pursuant to 11 U.S.C. § 1141(a). It adds that the binding nature of a plan includes matters incorporated into the plan,

citing <u>Charbono v. Sumski (In re Charbono)</u>, 790 F.3d 80, 84 (1st Cir. 2015),[8] and that

judicial estoppel should be applied to bar the Debtor from evading the provisions of the

Confirmation Order, citing, *inter alia*, <u>Guay v. Burack</u>, 677 F.3d 10, 16 (1st Cir. 2012).   It

states:

> Having obtained approval of its Plan in the First Bankruptcy by agreeing
> that a subsequent bankruptcy filing while the Debtor was in default would
> be subject to dismissal, the Debtor may not now oppose Blue Hill's efforts
> to hold the Debtor to its agreement.
>
> . . .   Admittedly, while provisions barring a Debtor from filing for
> bankruptcy or consenting to stay relief are not typically enforced when they
> are simply included in loan documents, the same is not true when agreed
> to as part of a prior bankruptcy case. *See, e.g.*, <u>In re BGM Pasadena, LLC</u>,
> 2016 WL 1738109 (Bankr. C.D. Cal. April 27, 2016) ("While it is true that
> courts have generally treated waivers of the automatic stay as
> unenforceable when they are contained in prepetition agreements between
> a lender and a borrower (because the interests of third parties, such as
> unsecured creditors, for whose benefit the automatic stay exists were not
> considered at the time the agreement was made), *the same cannot be said of*
> *waivers that are approved after notice and an opportunity for hearing in the context*
> *of an earlier bankruptcy case. When such a waiver is made a part of a confirmed*
> *plan or a court-approved settlement agreement, either with the consent of*
> *unsecured creditors or after they have received notice and an opportunity to object,*
> *absent changed circumstances, such waivers have routinely been enforced.*")

(emphasis added).

---

[8] In <u>Charbono</u>, the standard form confirmed by the bankruptcy court contained a tax
return production requirement that required the debtor to provide a copy of each federal
income tax return (or any request for extension) directly to the Trustee within seven days
of the filing of the return (or any request for extension) with the taxing authority. "The
bankruptcy court's decree confirming the Plan incorporated the tax return production
requirement and, thus, that requirement became an order of the court."   790 F.3 at 84.
The United States Court of Appeals for the First Circuit upheld a fine of $100 as a sanction
for the Debtor's failure to deliver a copy to the Chapter 13 trustee of his request for an
extension of the filing deadline for his federal income tax return within the time allowed
under the terms of the confirmed plan.

Blue Hill, citing, *inter alia*, In re DB Capital Holdings, LLC, 463 B.R. 142, 2010 WL 4925811, at *3 (B.A.P. 10th Cir. 2010), also argues that the Debtor lacked authority to file a bankruptcy petition because it had agreed to amend its organizational documents: (a) so that it would not be authorized to file a second bankruptcy so long as it was in default under its modified mortgage loan (*see* Plan, Section 4.01, Class 2, (f)); and (b) "to incorporate the concept of an independent manager whose vote will be needed for Borrower to engage in certain major decisions, one of which being the Borrower seeking relief in a Debtor Proceeding." Modification Agreement, Section 3.5(f). Blue Hill contends that the Debtor lacked authority to file a bankruptcy petition, assuming it complied with the provisions of the Modification Agreement, and, if it failed to incorporate such a provisions, it acted in bad faith in commencing the instant bankruptcy case, thus warranting dismissal.

Blue Hill next contends that dismissal is warranted pursuant to 11 U.S.C. § 1112(b)(1) "for cause," examples of which are set forth in § 1112(b)(4)(A)-(P). Admitting that it has the initial burden of establishing cause, Blue Hill argues that cause exists owing to the absence of good faith, citing In re Plaza Antillana Inc., No. 13-10013 ESL, 2014 WL 585299, at *7–8 (Bankr. D. P.R. Feb. 14, 2014) ("This court in In re Costa Bonita Beach Resort Inc., 479 B.R. 14 (Bankr. D. P.R. 2012) held that lack of good faith (or bad faith) in filing a Chapter 11 petition constitutes "cause" to dismiss a Chapter 11 petition pursuant to 11 U.S.C. § 1112(b)(1)."). Relying upon the Modification Agreement, Section 3.4(a), it argues:

15

> [D]ismissal for cause is warranted because the Debtor agreed – in exchange
> for concessions in the prior bankruptcy, and pursuant to a procedure
> involving notice, a hearing, and judicial oversight – that in the event it filed
> a subsequent bankruptcy Blue Hill would be "entitled … (x) to obtain an
> order from the court dismissing such filing as a bad faith filing and
> Borrower agrees that such filing shall have been made in bad faith and (y)
> to obtain an order from the court dismissing such filing as a bad faith filing
> and Borrower agrees that it will take no action to oppose the entry of such
> order of dismissal or to dispute a finding of fact by the court that such filing
> was made in bad faith. The provisions of this Section shall survive the
> termination of this Agreement."

Blue Hill also points to the provisions of Section 2.3 of the Modification Agreement where the Debtor acknowledged that a subsequent bankruptcy petition "would be in bad faith and solely for the purposes of delaying, inhibiting or otherwise impending [sic] the exercise of the Lender of Lender's rights and remedies against Borrower and the Property pursuant to the Loan Documents or at law."   According to Blue Hill, where the Modification Agreement was an integral part of the consensual plan and Confirmation Order, this court should enforce its contractual provisions. *See e.g.,* In re Excelsior Henderson Motorcycle Mfg. Co., Inc., 273 B.R. 920, 924 (Bankr. S.D. Fla. 2002) (prepetition agreement, in which debtor waived its right to enjoy protection of automatic stay as part of plan confirmation process was enforceable); In re Atrium High Point Ltd. P'ship, 189 B.R. 599, 607 (Bankr. M.D.N.C. 1995) (same).

Blue Hill also argues that the Debtor should not be permitted to use cash collateral based upon Section 3.4(a) of the Modification Agreement and that it should be granted relief from the automatic stay.  With respect to stay relief, it contends "cause" exists under 11 U.S.C. § 362(d)(1) because the Debtor consented to the request for relief from stay, citing In re Triple A & R. Capital, Inv., Inc., 519 B.R. 581, 584 (Bankr. D. P.R. 2014), *aff'd,*

No. 14-1896, 2015 WL 1133190 (D. P.R. Mar. 12, 2015).  Blue Hill also contends that it is entitled to relief from the automatic stay because it lacks adequate protection under 11 U.S.C. § 362(d)(1), and because the Debtor has not met its burden of showing the Property is necessary to an effective reorganization under 11 U.S.C. § 362(d)(2).

B. The Debtor

The Debtor opposes the enforceability of a collection of bankruptcy waivers contained in the parties' pre-petition Modification Agreement, including a waiver of the automatic stay, a waiver of the right to oppose dismissal of the case, and a waiver of the use of cash collateral. According to the Debtor, "[t]aken together, these provisions should not be enforced because they amount to a complete waiver of bankruptcy protection in violation of public policy."  The Debtor adds, as an alternative argument that "given the facts and circumstances of the Debtor's current chapter 11 case, even if the Debtor's pre-petition waiver of the automatic stay, right to oppose dismissal, or waiver of the use of cash collateral are not per se unenforceable, Blue Hill's motion should be denied because there is no basis for relief from stay, there is no cause for the dismissal of this case, and Blue Hill's interest is adequately protected" and its unsecured creditors would be harmed.

The Debtor maintains that this Court should examine the waiver provisions "as a whole and not in separate distinct pieces" because the extent of the waivers benefitting Blue Hill are tantamount a direct waiver of the right to file a bankruptcy petition. The Debtor contends that enforcing its prior consent to immediate dismissal of its present case, either be it outright or as a bad faith filing, is indistinguishable from a waiver of the

17

right to file a bankruptcy petition.  In addition, quoting <u>In re Jenkins Court Assocs. Ltd.</u>
<u>P'ship.</u>, 181 B.R. 33, 37 (Bankr. E.D. Pa. 1995), it observes that "'[a]s a practical matter,
there may be little significant distinction between the enforcement of a pre-petition
waiver of the automatic stay in a single asset case and the enforcement of a provision
prohibiting the filing of a bankruptcy case in the first place,'" although the Debtor notes
the contrary authority adopted by the court in <u>In re Atrium High Point Ltd. P'Ship</u>., 189
B.R. 599, 607–08 (Bankr. M.D.N.C. 1995).

The Debtor, citing, *inter alia*, <u>In re Powers</u>, 70 B.R. 480, 483 (Bankr. D. Mass. 1994),
recognizes that in some cases a debtor's waiver of the automatic stay is permissible,
though not binding on other creditors. The Debtor urges this Court to consider the
following factors taken from the decisions in <u>Atrium High Point</u> and <u>Powers</u> to assess
whether the dismissal and stay waiver should be enforced:

    1. The circumstances that led to the waiver;

    2. The consideration and benefits the debtor received in exchange;

    3. Prejudice to the secured creditor if the waiver was not enforced;

    4. Harm to other creditors;

    5. Likelihood of successful reorganization; and

    6. Whether there is equity in the collateral

With respect to the first factor, the circumstances leading to the waivers, the Debtor
asserts that it had no bargaining power during plan negotiations prior to confirmation
and "the Modification Agreement reveals that Blue Hill obtained far-reaching
concessions that effectively handcuffed the Debtor."  Moreover, the Debtor contends that

18

the Modification Agreement was essentially a reaffirmation agreement because Blue Hill

was undersecured by over $1 million yet the Debtor capitalized over $600,000 of interest

and fees, agreed to the "draconian waivers," and received no benefits other than being

able to continue its operations while making mortgage payments and attempting to

refinance the Property.

The Debtor, on the one hand, maintains that Blue Hill will not be prejudiced by

enforcement of the waivers because it is adequately protected because the value of the

Property has increased,[9] the Debtor is proceeding to propose a plan of reorganization,

involving the sale or refinancing of the Property to pay Blue Hill in full.  On the other

hand, the Debtor contends that unsecured creditors with claims totaling approximately

$374,000 will be harmed because there is sufficient equity in the Property that could be

realized from a sale or refinancing to pay their claims in full through a reorganization,

while they likely would receive nothing if Blue Hill were to foreclose.

With respect to the likelihood of a successful reorganization, the Debtor states that

one is "extremely likely" in view of the significant equity in the Property.

C. Blue Hill's Contentions as to Adequate Protection

Blue Hill disputes the Debtor's assertion as to the value of the Property, observing

that "The Debtor's unsupported valuation has no basis in reality. In fact, a review of the

Debtor's financial disclosures in the First Bankruptcy versus its Supplemental Cash

Collateral Budget . . .  in this bankruptcy reveals that the Property's value has not changed

---

[9] As noted above, the Debtor ascribes a value of approximately $3.8 to $4.0 million to the
Property and avers that Blue Hill's claim is approximately $2.6 million.

19

appreciably since the First Bankruptcy." While noting that NOI [net operating income] is used to determine the value of a commercial property using the income approach, Blue Hill observes that the Debtor's Proposed Cash Collateral Budget, when compared to prior budgets from the First Bankruptcy, shows "(a) marginally higher rental income (an increase of about 10% from 2013-2014); (b) 30% higher expenses; and (c) a lower total yearly NOI." It adds:

> The lack of any appreciable increase in value from the First Bankruptcy is further corroborated by an Appraisal commissioned by Blue Hill and conducted by Colliers International Valuation and Advisory Services dated August 28, 2017, which opines that the Property's as-is market value as of the appraisal date was $2,850,000. Based on the above, it is clear that the Debtor's unsupported value of $3.8 to $4.0 million is wholly unrealistic and contrary to accepted appraisal methodologies.

## IV. DISCUSSION

### A. Applicable Law

Courts considering waivers of bankruptcy protections most often do so in the context of waivers of the protection of the automatic stay. Because Blue Hill seeks relief from the automatic stay as an alternative to dismissal, this Court shall only consider its request to enforce the waiver of the automatic stay at this time. Nevertheless, the Court observes that it would appear that the Debtor did not modify its organizational documents to incorporate the concept of an independent manager as Sherman executed the bankruptcy petition on behalf of the Debtor, thus lending credence to Blue Hill's dismissal arguments.

Courts are divided as to the enforceability of prepetition waivers of and restrictions on bankruptcy relief even if they appear in court-approved agreements. *See*

<u>In re BGM Pasadena, LLC</u>, No. 2:16-CV-03172-CAS, 2016 WL 3212243, at *4–5 (C.D. Cal. June 2, 2016); <u>In re Triple A & R Capital Inv., Inc.</u>, 519 B.R. 581 (Bankr. D. P.R. 2014), *aff'd sub nom*. <u>In re Triple A & R Capital Inv. Inc.</u>, No. BR 14-4744 BKT11, 2015 WL 1133190 (D. P.R. Mar. 12, 2015); <u>In re Alexander SRP Apartments, LLC</u>, No. 12-20272, 2012 WL 1910088, at *5–7 (Bankr. S.D. Ga. Apr. 20, 2012). *See also* <u>In re DB Capital Holdings, LLC</u>, 454 B.R. 804, 815 (Bankr. D. Colo. 2011) ("waivers, unless they were part of a previous bankruptcy proceeding—for example, part of a confirmed plan or stipulation resolving an earlier motion for relief-appear to conflict with the policies and purposes of the Bankruptcy Code, and should not be enforced"); <u>In re Blocker</u>, 411 B.R. 516, 520 (Bankr. S.D. Ga. 2009) (prospective waiver of protections of the automatic stay was valid under 11 U.S.C. § 105, even assuming that debtors were not collaterally estopped from challenging validity of consent order, because debtor was not denied future access to the bankruptcy court); <u>In re Bryan Road, LLC</u>, 382 B.R. 844, 848 (Bankr. S.D. Fla. 2008) ("As a general proposition, prepetition waivers of stay relief will be given no particular effect as part of initial loan documents; they will be given the greatest effect if entered into during the course of prior (and subsequently aborted) chapter 11 proceedings. Although I agree that stay relief provisions in prior chapter 11 plans are entitled to great respect because they have been negotiated in a plan context and approved after notice to all parties in interest, I conclude that the existence of a prior confirmed reorganization plan is not a condition precedent to the enforceability of a stay relief agreement. I agree with Judge Laney's analysis [in <u>In re Sky Grp. Int'l, Inc.</u>, 108 B.R. 86 (Bankr. W.D. Pa. 1989)]."); <u>In re Frye</u>, 320 B.R. 786, 791-92 (Bankr. D. Vt. 2005) ("Although pre-petition agreements

waiving the protection afforded by the automatic stay are enforceable, such waivers are

neither *per se* enforceable, nor self-executing. . . . The Court further finds that in deciding

whether relief from stay should be granted based on such waivers, the factors identified

by the <u>Atrium</u> must be considered"); <u>In re Desai</u>, 282 B.R. 527, 532 (Bankr. M.D. Ga.

2002)(agreeing with the court in <u>Atrium</u> and holding that "[a]lthough prepetition

agreements waiving the protection afforded by the automatic stay are enforceable, such

waivers are not per se enforceable, nor are they self-executing. . . . The court further finds

that in deciding whether relief from stay should be granted based on such waivers, the

following factors should be considered: (1) the sophistication of the party making the

waiver; (2) the consideration for the waiver, including the creditor's risk and the length

of time the waiver covers; (3) whether other parties are affected including unsecured

creditors and junior lienholders, and; (4) the feasibility of the debtor's plan."); <u>In re</u>

<u>Excelsior Henderson Motorcycle Mfg. Co., Inc.</u>, 273 B.R. 920, 924 (Bankr. S.D. Fla. 2002)

("Having determined that the Debtor received valuable consideration [through a

restructured note in conjunction with a prior confirmed Chapter 11 plan] in exchange for

a benefit it would receive under the Bankruptcy Code, the Court agrees with the holding

in <u>Atrium</u>, and finds that the provision waiving the automatic stay is specifically

enforceable. To hold otherwise would belie the rationale behind entering into such pre-

petition stipulations."); <u>In re Atrium High Point Ltd. P'ship</u>, 189 B.R. 599, 607 (Bankr.

M.D.N.C. 1995) (holding that the waiver clause in debtor's confirmed plan in its first

bankruptcy case was intended to be binding proscription, not just event of default, that

the prepetition waivers of automatic stay protection are enforceable in appropriate cases,

that enforcing debtor's prepetition waiver of automatic stay did not violate public policy, and that lender could not enforce debtor's prepetition waiver of automatic stay against third-party creditors who had not waived right to object to motion for relief); In re Jenkins Court Assoc. Ltd. P'ship, 181 B.R. 33, 37 (Bankr. E.D. Pa. 1995) (where the waiver was not part of a court approved agreement or part of a reorganization plan, the court held "as a practical matter, there may be little significant distinction between the enforcement of a pre-petition waiver of the automatic stay in a single asset case and the enforcement of a provision prohibiting the filing of a bankruptcy case in the first place."); and In In re Powers, 170 B.R. 480, 484 (Bankr. D. Mass. 1994) (Judge Hillman determined that a debtor's prepetition waiver of the protections of the automatic stay in loan documents was not per se unenforceable, that the waiver was not self-executing, and that the waiver did not bar other creditors, or even the debtor, from responding to creditor's motion for relief from stay). *See generally* Ari Allan Schnall, *Debtor as Fiduciary: A New Angel on why Prepetition Waivers of the Automatic Stay Should not be Enforced*, 22 J. Bankr. L. & Prac. 1 Art. 2 (2013).

In In re BGM Pasadena, LLC, No. 2:16-CV-03172-CAS, 2016 WL 3212243, at *4–5 (C.D. Cal. June 2, 2016), the district court summarized the legal landscape on this issue, observing that where the waivers have been the subject of a bankruptcy court order, they should generally be enforced:

> [T]he bankruptcy court rightly noted, "waivers that are approved after notice and an opportunity for hearing in the context of an earlier bankruptcy case" are not per se (or even generally) unenforceable. Bankruptcy Dkt. 202, at 5. As the bankruptcy court further explained,

When such a waiver is made a part of a confirmed plan or a court-approved settlement agreement, either with the consent of unsecured creditors or after they have received notice and an opportunity to object, *absent changed circumstances*, such waivers have routinely been enforced. The Debtor in this case has not identified any facts or circumstances that should make this Court unwilling to enforce the parties' earlier court-approved settlement. That agreement contemplated that the Secured Creditor would be entitled to relief from the automatic stay if the Debtor filed another bankruptcy case.

Id. at 6 (emphasis added).

2016 WL 3212243, at *4. The district court added:

Although the bankruptcy court's order does not cite to any cases enforcing pre-petition waivers, there is no shortage of authority supporting the court's statement of the law. *See, e.g.,* In re Frye, 320 B.R. 786, 796 (Bankr. D. Vt. 2005) (enforcing a pre-petition agreement); In re Excelsior Henderson Motorcycle Mfg. Co., 273 B.R. 920 (Bankr. S.D. Fla. 2002) (enforcing a pre-petition agreement); In re Shady Grove Tech Ctr. Assoc. Ltd. P'ship, 216 B.R. 386 (Bankr. D. Md. 1998) (setting forth several factors as to whether cause exists to warrant relief from stay); In re Atrium High Point Ltd. P'ship, 189 B.R. 599 (Bankr. M.D. N.C. 1995) (holding that pre-petition waivers are enforceable in appropriate cases); In re Priscilla Cheeks, 167 B.R. 817 (Bankr. D. S.C. 1994) (enforcing a pre-petition forbearance agreement); In re Jenkins Court Assoc. Ltd. P'ship, 181 B.R. 33 (Bankr. E.D. Pa. 1995) (holding that a pre-petition agreement would not be enforced without further development of the facts); In re Sky Group Int'l, Inc., 108 B.R. 86 (Bankr. W.D. Pa. 1989) (holding that a pre-petition waiver was not self-executing or per se enforceable); In re Club Tower, L.P., 138 B.R. 307 (Bankr. N.D. Ga. 1991) (holding that pre-petition waivers are enforceable).

The debtor in the instant case, like the debtors in In re Frye, In re Atrium, and In re Excelsior, "entered into [a] pre-petition agreement [ ] *as a result of a negotiated provision of a plan of reorganization in a prior bankruptcy case.*" In re Frye, 320 B.R. 786, 789 (Bankr. D. Vt. 2005) (emphasis added). "Enforcing the Debtor's agreement under these conditions does not violate public policy concerns," as this "is not a situation where a prohibition to opposing a motion to relief was inserted in the original loan documents . . . " In re Excelsior, 273 B.R. at 924; *see also* In re Frye, 320 B.R. at 789 (noting that the waiver in that case was not in the original loan documents but rather was part of the Forbearance Agreement to which the parties entered after the

debtor's first bankruptcy case was filed). Still, to the extent any such waivers are enforceable, the debtor argues that the bankruptcy court impermissibly "failed to implement any recognized balancing test" in finding the wavier to be valid. The bankruptcy court in In re Frye, for example, listed the following factors as relevant to the question whether relief from a stay should be granted based on a waiver:

> (1) the sophistication of the party making the waiver;

> (2) the consideration for the waiver, including the creditor's risk and the length of time the waiver covers;

> (3) whether other parties are affected including unsecured creditors and junior lienholders;

> (4) the feasibility of the debtor's plan;

> (5) whether there is evidence that the waiver was obtained by coercion, fraud or mutual mistake of material facts;

> (6) whether enforcing the agreement will further the legitimate public policy of encouraging out of court restructurings and settlements;

> (7) whether there appears to be a likelihood of reorganization;

> (8) the extent to which the creditor would be otherwise prejudiced if the waiver is not enforced;

> (9) the proximity in time between the date of the waiver and the date of the bankruptcy filing and whether there was a compelling change in circumstances during that time; [and]

> (10) whether the debtor has equity in the property and the creditor is otherwise entitled to relief from stay under § 362(d).

Id. at 790-91. The district court in BGM Pasadena, LLC, concluded:

The "weight given to each factor will vary on a case-by-case basis and must be left to the sound discretion of the court, based upon the equities, facts and circumstances presented." Id. at 791. Here, the debtor, who is represented by able counsel, appears to be fairly sophisticated and further

appears to have received consideration for the pre-petition waiver that arose from the prior bankruptcy proceeding. The debtor cites no evidence of coercion, fraud, or mutual mistake, nor does the debtor indicate that any compelling change in circumstances has occurred since the agreement was entered and approved in the prior bankruptcy proceeding. Indeed, the waiver is embodied in a bankruptcy-court approved settlement agreement that is only a few years old and whose subject is the same property at issue in the instant bankruptcy proceeding. Finally, enforcement of the waiver will further the legitimate public policy of encouraging out-of-court restructurings and settlements.

2016 WL 3212243, at * 5 (emphasis in original).

In <u>In re Triple A & R Capital Inv., Inc.,</u> the United States Bankruptcy Court for the

District of Puerto Rico observed:

Although stay waivers were long thought to be unenforceable as against public policy, an increasing number of courts are now enforcing them. There is no controlling law on this subject in this District or this Circuit. A review of the cases nationwide that addressed this issue indicate a trend that appears toward the enforcement of stay waivers. The difficult issue of whether prepetition stay waivers are enforceable, reflects the tension between the public policies favoring out of court workouts, on the one hand, and protecting the collective interest of the debtor's creditors, on the other. Bankruptcy courts that have tackled this issue have used different approaches with conflicting results. Three basic approaches have emerged: (1) uphold the stay waiver in broad unqualified terms on the basis of freedom of contract; (2) reject the stay waiver as unenforceable per se as against public policy; and (3) treat the waiver as a factor in deciding whether "cause" exists to lift the stay. This last approach has gained ground in recent years. *It is important to note that the courts are in agreement that a prepetition waiver of the automatic stay, even if enforceable, does not enable the secured creditor to enforce its lien without first obtaining stay relief from the bankruptcy court.* This requirement is satisfied in this case because PRLP indeed filed a motion requesting the lift of stay.

<u>In re Triple A & R Capital Inv., Inc.,</u> 519 B.R. at 584 (footnotes omitted).   The court

determined that the stay waiver was enforceable because it was included in a stipulation

regarding the use of cash collateral and adequate protection that it had approved.

Pursuant to the stipulation, the debtor ratified and agreed to be bound by the clause in a

forbearance agreement which contained the waiver of the protection of the automatic

stay.  The court concluded:

> [T]he Debtor cites to the holding in In re DB Capital Holdings, LLC, 454 B.R.
> 804 (Bankr. D. Colo. 2011), for the proposition that a single asset chapter 11
> debtor's prepetition waiver, as part of a prepetition forbearance agreement
> with a lender which prevented any opposition to a motion for stay relief,
> was unenforceable as too closely approximating, for a single asset debtor,
> waiver of the right to file for bankruptcy relief. The facts in DB Capital
> Holdings, LLC closely mirror the facts in this instant case, with one marked
> and significant departure. Our Debtor, on August 5, 2014, after the order
> for relief, entered into a Joint Stipulation for Interim Use of Cash Collateral
> and Adequate Protection ("Stipulation") with PRLP.  . . . The Stipulation
> was approved by the court on August 26, 2014.

519 B.R. at 584-85 (footnote omitted).

In In re Alexander SRP Apartments, LLC, No. 12-20272, 2012 WL 1910088 (Bankr.

S.D. Ga. Apr. 20, 2012), the court observed that pre-petition waivers of stay relief

"ordinarily will not be enforced if the waiver was contained in the initial loan document

but will be given greatest effect if entered into during the course of prior Chapter 11

proceedings" 2012 WL 1910088, at *5 (citing In re Bryan Road, LLC, 382 B.R. 844, 848

(Bankr. S.D. Fla. 2008)). The court added that it had previously enforced a pre-petition

waiver of the automatic stay, based on the principles of collateral estoppel, where the

waiver was part of a court-approved consent order entered in a prior bankruptcy case.

Id. (citing In re Blocker, 411 B.R. 516 (Bankr. S.D. Ga. 2009) (Davis, J.)).  The court, citing

In re Frye, 320 B.R. at 790–91 (enumerating ten factors important in determining whether

a waiver should be enforced), and In re Desai, 282 B.R. at 532 (delineating a four factor

test), concluded that waivers of the automatic stay were not per se unenforceable, but the

party opposing enforcement of the waiver has the burden of proving that the waiver

should not be enforced.  2012 WL 1910088, at *6.

In In re DB Capital Holdings, LLC, 454 B.R. 804, 813–16 (Bankr. D. Colo. 2011), the

court noted that the United States District Court for the Southern District of Texas had

observed that enforcement was generally allowable only if the agreement was part of a

previous bankruptcy case, not part of the non-bankruptcy loan agreement, explaining:

> It is against public policy for a debtor to waive the pre-petition protection
> of the Bankruptcy Code. In re Huang, 275 F.3d 1173, 1177 (9th Cir. 2002). As
> to waivers of the automatic stay, however, the majority view, and the trend
> in bankruptcy decisions, is that pre-bankruptcy waivers of the automatic
> stay are sometimes enforceable. In re Pease, 195 B.R. 431, 433 (Bankr. D.
> Neb. 1996) (collecting cases); *see also* In Re Bryan Road, LLC, 382 B.R. 844,
> 848 (Bankr. S.D. Fla. 2008). Some courts have dissented, however, and held
> that waivers of the automatic stay are unenforceable. Id. (collecting cases).
> Bankruptcy courts have typically enforced the waiver agreements arising
> from forbearance agreements or previous Chapter Eleven filings. In dicta,
> these courts have expressed a general proposition that pre-petition waivers
> of stay of relief will be given no particular effect if they are part of the
> original loan documents but will be given greater effect if they are entered
> into during the course of prior bankruptcy proceedings. In Re Bryan Road,
> 382 B.R. at 848; In re Atrium High Point Ltd. Partnership, 189 B.R. 599, 607
> (Bankr. M.D.N.C. 1995) (noting that a pre-petition waiver the court held
> enforceable was not contained in the original loan documents but rather in
> the debtor's reorganization plan).

In re DB Capital Holdings, LLC, 454 B.R. at 814 (quoting Wells Fargo Bank Minn., N.A.

v. Kobernick, 2009 WL 7808949, at *7 (S.D. Tex. May 28, 2009), aff'd, 454 F.App'x 307 (5th

Cir. 2011) (footnote omitted).  The Colorado bankruptcy court concluded that, in a single-

asset Chapter 11 case, the debtors' purported waiver, as part of prepetition forbearance

agreement with lender with deed of trust lien against that asset, of right to oppose

lender's motion for stay relief in event that they later filed for bankruptcy relief, was

unenforceable as too closely approximating a waiver of right to file for bankruptcy relief. Id. at 816.  *See also* In re Jenkins Court Assoc. Ltd. P'ship, 181 B.R. at 37 (cited with approval in In re Clouse, 446 B.R. 690 (Bankr. E.D. Pa. 2010)).  *See also* In re Excelsior Henderson Motorcycle Mfg. Co., Inc., 273 B.R. 920 (Bankr. S.D. Fla. 2002) (bankruptcy court enforced a provision waiving the automatic stay which was set forth in the plan confirmed by the court in the first bankruptcy case).

In In re Powers, 170 B.R. 480 (Bankr. D. Mass. 1994), Judge Hillman determined that pre-petition agreements waiving opposition to relief from the automatic stay may be enforceable in appropriate cases.  The waiver in the Powers case was part of an agreement that was executed when the debtor was the subject of an earlier Chapter 11 case, although it is unclear whether the court actually approved the agreement as the case was dismissed shortly after the agreement was executed. Judge Hillman observed that "the waiver is a primary element to be considered in determining if cause exists for relief from the automatic stay under § 362(d)(1). However, the existence of the waiver does not preclude third parties, or the debtor, from contesting the motion."  170 B.R. at 484.  He added:

> Once the pre-petition waiver has been established, the burden is upon the opposing parties to demonstrate that it should not be enforced. In addition to the extraordinary matters which Judge Paskay listed in B.O.S.S. Partners, supra, the Court will consider other factors, such as the benefit which the debtor received from the workout agreement as a whole; the extent to which the creditor waived rights or would be otherwise prejudiced if the waiver is not enforced; the effect of enforcement on other creditors; and, of course, whether there appears to be a likelihood of a successful reorganization. While the last is generally considered an element of proof under § 362(d)(2)(B), an analysis in accordance with the discussion in In re Building 62 Ltd. Partnership, 132 B.R. 219, 222 (Bankr. D. Mass. 1991) is certainly relevant in the present context.

<u>In re Powers</u>, 170 B.R. at 484.

Although the courts authoring the decisions referenced above examine issues such as whether prepetition waivers can be self-executing; whether such waivers can affect nonwaiving parties; and whether a bankruptcy debtor is a separate entity from the prepetition debtor that may have waived the stay, there is consensus "[s]tay waivers are not self-executing, nonwaiving creditors cannot be bound by a waiver entered into by others, and the debtor who waived the stay prepetition cannot escape that waiver by claiming to be a separate entity from the prepetition debtor." Ari Allan Schnall, *Debtor as Fiduciary: A New Angel on why Prepetition Waivers of the Automatic Stay Should not be Enforced*, 22 J. Bankr. L. & Prac. 1 Art. 2 (2013). The author of that article observed:

> One scenario worth noting is where a waiver of a future automatic stay is made part of an order or reorganization plan in a previous bankruptcy case. Depending on the circumstances, it may be that all creditors in the first bankruptcy case are deemed parties to the waiver, and therefore if the debtor files a second bankruptcy petition shortly thereafter, there may be few, if any, nonwaiving creditors. *See, e.g.*, <u>In re Blocker</u>, 411 B.R. 516 (Bankr. S.D. Ga. 2009), *motion for stay pending appeal denied*, 411 B.R. 521 (Bankr. S.D. Ga. 2009) and *motion for stay pending appeal denied*, 2009 WL 2340700 (S.D. Ga. 2009) (enforcing waiver of relief that was present in consent order in previous Chapter 12 bankruptcy order regarding lift stay motion in that case); <u>In re Wald</u>, 211 B.R. 359 (Bankr. D. N.D. 1997) (enforcing waiver that was part of stipulation in previous bankruptcy); <u>In re Atrium High Point Ltd. Partnership</u>, 189 B.R. 599, 28 Bankr. Ct. Dec. (CRR) 254 (Bankr. M.D. N.C. 1995) (recognizing waiver in debtor's confirmed plan in previous case, noting, though, that creditors not parties to the waiver cannot be bound by such waiver).

<u>Id.</u> at n.33.

B. <u>Analysis</u>

The Court agrees with those decisions in which courts have upheld contractual provisions waiving the protections afforded by the automatic stay when they are incorporated in court orders approving settlement agreements or orders confirming Chapter 11 plans while employing a multi-factor approach.[10]   In particular, the Court finds that the frequently cited decision in <u>In re Atrium High Point Ltd. P'ship</u>, 189 B.R. 599 (Bankr. M.D. N.C. 1995), to be persuasive.  In that case, the court observed:

> Although an order of this court granting relief from stay may debilitate the Debtor somewhat, the Debtor accepted that risk when it agreed to the prepetition waiver of the automatic stay. There was no prepetition waiver in the original loan agreement or under the First or Second Modification. The agreement not to object to the motion to lift stay was bargained for under the Third Modification and under this Debtor's first confirmed plan of reorganization. The Debtor received a lower interest rate and a five-year extension of the loan. Ohio National received the Debtor's covenant not to oppose a motion to lift stay in a subsequent bankruptcy filing.
>
> Enforcing the Debtor's agreement under these conditions does not violate public policy concerns.  This is not a situation where a prohibition to opposing a motion to relief from stay was inserted in the original loan documents. The Debtor received significant benefits under the Third Modification and the confirmed plan treatment of Ohio National. In

---

[10] Use of the multi-factor approach does not warrant an evidentiary hearing in this case. Although the parties indicate that there are facts in dispute (i.e., whether Andrew and Sara Sherman were represented by counsel in the First Bankruptcy; the value of the Property; the amount of Blue Hill's claim; the amount of unsecured claims against the Debtor's estate; whether the Debtor continued to make payments on the Note after it matured; whether enforcement of any or all of the waivers in the Modification Agreement will harm the Debtor's unsecured creditors (Blue Hill contends that this is a disputed issue of law, not a disputed fact); whether the Debtor has a likelihood of a successful reorganization (Blue Hill contends that this is a disputed issue of law, not a disputed fact); and whether failure to enforce any or all of the waivers in the Modification Agreement will harm Blue Hill (Blue Hill contends that this is a disputed issue of law, not a disputed fact), this Court can assess those factors without conducting an evidentiary hearing based upon the record of proceedings in this case and the First Bankruptcy.

exchange for these benefits, the Debtor bargained away its right to oppose
a motion to lift stay in a subsequent bankruptcy proceeding. Accordingly,
the court will not consider the objection to relief from stay filed by the
Debtor.

Id. at 607. Although the court in Atrium determined that the waiver was enforceable as

to the debtor, it denied relief from the automatic stay because nine, third-party creditors

objected to the motion for relief from stay. The Court observed: "unlike the lamentations

of the Debtor, their objections carry great weight in the court's resolution of this matter.

The court must look at the circumstances under which the waiver arose and consider it

as one of a number of factors, including the possibility of equity in the collateral and the

impact of third-party creditors affected by the motion for relief from stay." Id. at 608.

Accordingly, because the waiver of the automatic stay contained in the Modification

Agreement is not *per se* unenforceable, the Debtor, as the party opposing enforcement of

the waiver, has the burden of proving that the waiver should not be enforced. In re

Alexander SRP Apartments, LLC, 2012 WL 1910088, at *5. *See also* In re BGM Pasadena,

LLC, 2016 WL 3212243, at *4-5. In this regard, the Court finds that the most important

factor for the purposes of this case is "the proximity in time between the date of the

waiver and the date of the bankruptcy filing and whether there was a compelling change

in circumstances during that time." 2016 WL 3212243, at * 5 (citing In re Frye, 320 B.R. at

791).

The Court concludes that the waiver of the protection of the automatic stay

constitutes "cause" under 11 U.S.C. § 362(d)(1) for relief from the automatic stay and that

the Debtor has not satisfied that burden of demonstrating that Blue Hill is adequately

protected or otherwise not entitled to rely upon the waiver of the automatic stay approved by Judge Hillman as part of a consensual plan of reorganization in its prior case.

The Debtor, who was represented by an experienced bankruptcy attorney in its prior Chapter 11 case, negotiated the Modification Agreement over several months, agreed to incorporate the terms of the Modification Agreement into its plan of reorganization, and the bankruptcy judge entered an order confirming its plan and approving the Modification Agreement in form.  As a result, it was able to emerge from Chapter 11 in control of the Property.  Although the Debtor asserts that it lacked bargaining power and the Modification Agreement was tantamount to a reaffirmation agreement, there is no evidence that the Modification Agreement was anything but a negotiated, arms' length settlement between two sophisticated parties.

The Debtor argues that Blue Hill is adequately protected, that there is equity in the Property, and that it has a likelihood of a successful reorganization because it is pursuing a dual tract of a sale or refinancing to pay all its creditors, including Blue Hill, in full. Blue Hill disagrees. This Court concludes that Blue Hill has established that it has a colorable claim to relief and that it is entitled to relief from the automatic stay. As the Untied States Court of Appeals for the First Circuit observed in Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26 (1st Cir. 1994),

> [A] hearing on a motion for relief from stay is merely a summary proceeding of limited effect, and adopt the Vitreous Steel court's holding that a court hearing a motion for relief from stay should seek only to determine whether the party seeking relief has a colorable claim to property of the estate. The statutory and procedural schemes, the legislative history,

and the case law all direct that the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims. Rather, it is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonable likelihood that a creditor has a legitimate claim or lien as to a debtor's property. If a court finds that likelihood to exist, this is not a determination of the validity of those claims, but merely a grant of permission from the court allowing that creditor to litigate its substantive claims elsewhere without violating the automatic stay.

Id. at 33–34.

The Debtor's arguments that the waivers approved in its first Chapter 11 bankruptcy case are not binding and that changes in circumstances, such as appreciation in value of the Property, warrant relief from the Court's Confirmation Order in the prior case, ignore the res judicata effect of the order of confirmation in the First Bankruptcy and the statutory directive of 11 U.S.C. § 1141(a).  The provisions of the confirmed plan and the final order confirming it in the First Bankruptcy are binding on the Debtor, who is barred from now attempting to claim that the provisions of the final order confirming the plan entered by Judge Hillman are not valid.   Accordingly, the Court rejects the Debtor's contention that changes in its circumstances, including appreciation in the value of the Property, warrant relief from the prior Confirmation Order which incorporated the Modification Agreement.

A bankruptcy court's order confirming a reorgaization plan is a final judgment, which binds the debtor, any creditor, and equity security holder to the terms and effect of a confirmed plan.  11 U.S.C. § 1141(a).  *See* United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 275, 130 S.Ct. 1367 (2010); Travelers Indemnity Co. v. Bailey, 557 U.S. 137, 152, 129 S.Ct. 2195 (2009).  "Once a plan is confirmed, neither a debtor nor a creditor may

34

assert rights that are inconsistent with its provisions." Johnson v. Laing (In re Laing), 146 B.R. 482, 484 (Bankr. N.D. Okla. 1992) (citations omitted), *aff'd*, 31 F.3d 1050 (10th Cir. 1994). *See also* Republic Supply Company v. Shoaf, 815 F.2d 1046, 1050 (5th Cir. 1987) (holding that provisions of a confirmed plan are binding "[r]egardless of whether [a] provision is inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it is nonetheless included in the Plan, which was confirmed by the bankruptcy court without objection and was not appealed."). Thus, for example, where a debtor agrees to except a debt from discharge in a Chapter 11 plan that is confirmed, the agreement and order of confirmation are binding in a subsequent bankruptcy case even though a waiver of discharge is generally unenforceable in a subsequent bankruptcy. *See* Laing, 146 B.R. at 485-86.

In the present case, the Debtor's request that the Court disregard Judge Hilman's Confirmation Order and the provisions of the consensual plan of reorganization that incorporated the Modification Agreement, is contrary to the binding effect of the final Confirmation Order. The Debtor presented the First Amended Plan and the Modification Agreement, and it proposed the Confirmation Order to the bankruptcy court; it now is barred from taking the position in this case that the Modification Agreement and Confirmation Order are unenforceable. The Debtor's request that the Court exercise its discretion to not enforce the waivers in the prior case, and find that on balance the harm to the Debtor outweighs the harm to the mortgagee, ignores the binding effect of the Confirmation Order in the First Case, and is an improper collateral attack on the Confirmation Order.

Moreover, the Debtor's arguments are contrary to the doctrine of judicial estoppel which protects the integrity of the judicial system by preventing a party from taking inconsistent, mutually exclusive positions in judicial proceedings. *See* New Hampshire v. Maine, 532 U.S. 742, 750, 121 S. Ct. 1808 (2001). *See also* Guay v. Burack, 677 F.3d 10, 16 (1st Cir. 2012) ("Where one succeeds in asserting a certain position in a legal proceeding one may not assume a contrary position in a subsequent proceeding simply because one's interests have changed."); Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004) ("The doctrine's primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system … . In line with this prophylactic purpose, courts typically invoke judicial estoppel when a litigant is 'playing fast and loose with the courts.'").

After the mortgagee had filed a competing plan in the First Bankruptcy, the Debtor agreed to a number of terms, including the waivers, in order to present a consensual plan to the Court. The Debtor's position in this case is inconsistent with the negotiated Modification Agreement and terms of the consensual plan and with the Confirmation Order entered by the court in the First Bankruptcy.   The Debtor now seeks to renege on these agreements and violate the Confirmation Order, a position that this Court cannot countenance.

## V. CONCLUSION

In accordance with the foregoing, the Court shall enter an order granting Blue

Hill's alternative request for relief from the automatic stay.

By the Court,

Dated: April 13, 2018                              Joan N. Feeney
                                                   United States Bankruptcy Judge